**In the Matter of George William WOODS, Debtor.**

**Bankruptcy No. MM7–85–01638.**

United States Bankruptcy Court, W.D. Wisconsin.

March 31, 1986.

---

Edward Grutzner, Grutzner, Byron, Holland & Vollmer, Beloit, Wis., for debtor.

William W. Rentz, Bolgrien, Ruth & Rentz, S.C., Beloit, Wis., for Heritage Bank Beloit.

Jerry J. Armstrong, Madison, Wis., trustee.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

On August 23, 1985, the debtor, George Woods, filed a petition for relief under chapter 7 of the Code. On October 28, 1985, Heritage Bank Beloit, ("the bank") filed an objection to the debtor's claim of a statutory exemption for his individual retirement account ("IRA") under WIS. STAT. §§ 701.06 and 815.18(31). Approximately $21,242.65 is held in the account. The bulk of that amount was "rolled-over" from a "savings and investment plan" established by the debtor's former employer, Beloit Corporation, when the debtor ceased employment with that firm. The bank alleges that on the date of bankruptcy $16,-828.54 was attributable to the "roll-over" and $4,414.11 was attributable to contributions made by the debtor after he ceased employment with Beloit Corporation. The debtor does not dispute those figures.

This matter was set for hearing on November 27, 1985, but was taken under advisement at the request of counsel with briefs to be submitted and a decision to be rendered on stipulated facts. The debtor and the bank each timely filed initial briefs, but have apparently declined to file reply briefs. Based on the record and the briefs herein, it appears that there are no issues of material fact in dispute. Additional facts relevant to the questions of law presented will be set out below.

The bank alleges three specific grounds of objection. First, the bank states that WIS.STAT. § 815.18(31) is unconstitutional under Article I, Section 17 of the state constitution. This argument was conclusively rejected by this court's decision in *In Re Martinson*, 57 B.R. 560 (Bankr.W.D. Wis.1986), and requires no further discussion. Second, the bank argues that an IRA is not a qualified employee retirement plan under WIS.STAT. § 815.18(31). Third, the bank argues that the IRA is not a "spendthrift trust" within the meaning of WIS. STAT. § 701.06 and 11 U.S.C. § 541(c)(2). The debtor argues that even if the IRA is not otherwise exempt, that portion of the fund which was rolled-over from a qualified pension plan retains its former exempt status.

## I.

■ The bank argues both on policy grounds and on the basis of the statutory language that an IRA can never constitute an exempt plan under WIS.STAT. § 815.-18(31).[1] The bank notes that numerous cases nationwide have held that IRA's are not retirement plans under analogous state statutes. Section 815.18(31) however is exceptionally broad in scope. Since this is apparently a matter of first impression in Wisconsin it would be inappropriate for this federal court to resolve that issue if a narrower ground of decision can be found. A narrower ground is available in this case. By its express terms section 815.18(31) exempts only those plans "created by an employer...." WIS.STAT. § 815.18(31)(a). It is undisputed that the debtor established the IRA herein and that the debtor is not an "employer" or "self-employed" as required by the statute. It is thus unnecessary to decide if an IRA can ever qualify under the statute. It is clear that the debtor's IRA cannot. *See generally In Re Ferwerda*, 424 F.2d 1131, 1133 (7th Cir. 1970) (Wisconsin exemption statute could not be extended beyond the clear meaning of the statutory language).

■ It is equally clear that the debtor's IRA cannot qualify as a "spendthrift trust" under WIS.STAT. § 701.06 and thus is not eligible either for the exemption contained in that section or for the exemption provided by 11 U.S.C. § 541(c)(2)[2]. Section 701.-06(1) expressly excludes from coverage those trusts in which the settlor is the beneficiary.[3] The debtor's IRA thus fails to come within the coverage of any specific Wisconsin exemption statute.

## II.

Although the debtor's IRA cannot itself constitute an exempt plan, it does not follow that the "roll-over" funds in the IRA

1. WIS.STAT. § 815.18(31) provides:
   EMPLOYE RETIREMENT BENEFITS. (a) The term 'plan' as used in this subsection means any retirement, pension, disability, death benefit, stock bonus or profit-sharing plan created by an employer for the exclusive benefit of himself, if self-employed or of some or all of his employes, or their dependents or beneficiaries, to which contributions are made by such employer, or employes, or both, for the purpose of distributing in accordance with such plan to such employes, or their dependents or beneficiaries, the earnings or the principal, or both, of a trust created as part of the plan, or annuity, insurance or other benefits under such a plan whether or not purchased by a trust; if it is impossible under a trust created as part of a plan at any time prior to the satisfaction of all liabilities with respect to employes and their dependents and beneficiaries under the trust, for any part of the principal or income to be at any time used for or diverted to purposes other than for the exclusive benefit of such employes, or their dependents or beneficiaries. The term 'employer' as used in this subsection shall be deemed to include a group of employers creating a combined plan for the benefit of their employees or the beneficiaries of such employees.
   (b) The income arising from any personal property held in any employes' trust created as part of a plan may be permitted to accumulate in accordance with the terms of said trust and the plan of which said trust forms a part for such time as may be necessary to accomplish the purposes for which such trust has been created. Any such employes' trust shall not be deemed to be invalid as violating the rule against perpetuities or any law or rule against perpetuities or the suspension of the power of alienation of title to property, but such a trust may continue for such time as may be necessary to accomplish the purposes for which it has been created.
   (c) The interest of any person in any employes' benefit plan as defined in this subsection and any pension or other benefit derived therefrom shall not be subject to any garnishment, attachment, execution, sequestration, levy or any other legal or equitable process and no assignment of any such interest, pension or other benefit shall be valid or recognized.

2. 11 U.S.C. § 541(c)(2) provides:
   A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

3. WIS.STAT. § 701.06(1) provides:
   INCOME BENEFICIARIES. A settlor may expressly provide in the creating instrument that the interest in income of a beneficiary other than the settlor is not subject to voluntary or involuntary alienation. The income interest of such a beneficiary cannot be assigned and is exempt from claims against the beneficiary until paid over to him pursuant to the terms of the trust.

are automatically non-exempt. To decide that question it must first be determined whether the debtor's "savings and investment plan" with Beloit Corporation was itself exempt and whether the proceeds of that plan retained the exemption. If the proceeds are exempt it must also be decided if that exemption was lost when the debtor reinvested the proceeds in a non-exempt IRA.

### A.

Section 815.18(31) exempts only:

retirement, pension, disability, death benefit, stock bonus or profit-sharing plan(s) created by an employer for the exclusive benefit of ... his employees ... to which contributions are made by such employer, or employes, or both, for the purpose of distributing in accordance with such plan to such employes ... if it is impossible under a trust created as part of a plan ... for any part of the principal or income to be ... diverted to purposes other than for the exclusive benefit of such employees....

WIS.STAT. § 815.18(31)(a).[4] The plan in this case is styled a "savings and investment plan." The Beloit Corporation also provided a "retirement plan" under which the debtor is 100% vested. The question thus arises whether the savings and investment plan is a "plan" within the statutory meaning. It is clear under the plan agreement that the assets of the plan are derived from employee and matching employer contributions. All assets are held in trust for the exclusive benefit of the employee participants and their beneficiaries. (Plan section 9.01) No interest in the plan or payments made under the plan may be assigned. (Section 8.03) Certain restrictions on employee withdrawals exist. (Section 6.04) The purpose of the plan is obviously to create permanent investments for the employee's benefit.

■ Unlike some states, it is a cardinal rule in Wisconsin that exemption laws must be liberally construed. *Julius v. Druckrey*, 214 Wis. 643, 254 N.W. 358 (1934);

*Folschow v. Werner*, 51 Wis. 85, 7 N.W. 911 (1881); *Krueger v. Pierce*, 37 Wis. 269 (1875); *Heath v. Keyes*, 35 Wis. 668 (1874). Given the liberal construction required, it is fair to hold that the "savings and investment plan" is a "retirement plan" within the meaning of section 815.18(31). It is also the case that the employer's contributions are made exclusively out of current profit or accumulated surplus. (Section 4.02) Under the statutory language, the plan qualifies as a "profit-sharing plan" despite the fact that the contributions are "matching." The debtor's Beloit Corporation plan was thus a qualified exempt plan under WIS.STAT. § 815.18(31).

### B.

■ To determine whether "proceeds" of exempt property retain exempt status requires a careful examination of the particular statutory provision. *Gillett State Bank v. Knaack*, 229 Wis. 179, 181, 281 N.W. 913 (1938). As noted above, Wisconsin exemption statutes must be liberally construed. Despite this, the general rule is that proceeds of exempt property, unless the legislature indicates otherwise, are not exempt. *Gillett State Bank, supra* at 182, 281 N.W.2d 913.

A careful examination of WIS.STAT. § 815.18 reveals that most categories of exemptions carry no indication that proceeds of the exempted items remain exempt. Several notable exceptions stand out. Subsection (17) exempts all moneys arising from fire insurance payments on exempt property. Subsection (19) provides that certain "proceeds and avails" of life insurance policies are exempt. Subsection (21) exempts money paid from police and fire department pension funds. Subsection (24) exempts all money received as a war pension "whether ... in the actual possession of such person, on deposit, or loaned." Subsection (25) exempts certain sums "due or to become due and payable or paid to any person ..." on account of disability insurance. Subsection (27) protects all

---

**4.** *See* footnote 1 for the full text of section 815.18(31).

money "received or receivable" as federal disability insurance benefits.

The common factor uniting these "proceeds" exemptions is that the legislative intent to exempt each class of property would be thwarted if the proceeds, as well as the underlying property or right, were not exempted. This stands in sharp distinction to most subsections of section 815.18 where the legislative intent can be adequately effectuated by an exemption limited to the specific items themselves.

Not only does the exemption provided by subsection (31) clearly fall into the class of exemptions which are ineffectual without "proceeds protection," the statutory language is clear that such protection is granted. Paragraph (c) provides blanket protection to

> The interest of any person in any employes' benefit plan ... any pension or other benefit derived therefrom....

WIS.STAT. § 815.18(31)(c).[5] Not only is the "interest" in the plan protected but any "pension or other benefit" as well. A fair and liberal reading of the statutory language thus requires that a lump-sum payout on termination be considered an "other benefit" within the statutory meaning.

### C.

The only remaining question is whether the exempt proceeds lost their exemption when the debtor deposited them in an IRA. There appears to be no Wisconsin case directly on point. The few Wisconsin cases dealing with the question of reinvestment of exempt proceeds primarily center on federal statutes relating to war pensions. *See Estate of Buxton,* 246 Wis. 97, 16 N.W.2d 399 (1944); *Guardianship of Letourneau,* 238 Wis. 473, 300 N.W. 248 (1941); *Joyce v. Russell,* 140 Wis. 583, 123 N.W. 123 (1909); *Folschow v. Werner,* 51 Wis. 85, 7 N.W. 911 (1881). The general import of those cases was that while the cash proceeds of war pensions retained exempt status, *see Folschow v. Werner, supra,* that status was lost once the funds were converted into other property. *See Joyce v. Russell,*

*supra.* Thus in *Letourneau, supra,* the court held that the federal exemption regarding war pensions did not apply to certain U.S. treasury bonds purchased with pension proceeds. *Id.,* 238 Wis. at 479, 300 N.W. 248. Possibly in response to those cases the Wisconsin legislature broadened the exemption for war pensions, in what is now section 815.18(24), to include moneys on deposit or loan as well as cash proceeds. *See generally, Estate of Buxton,* 246 Wis. 97, 100–01, 16 N.W.2d 399 (1944).

The historical review of Wisconsin exemption law leads to no firm conclusion as to the status of reinvested pension proceeds under WIS.STAT. § 815.18(31). In the final analysis the determination must be based on the legislative intent as evidenced by the statutory language and the clear purpose of the law. In Wisconsin every statute must be interpreted "so as to avoid inconsistency and conflict and to give effect to every part." *Associated Hospital Service v. Milwaukee,* 13 Wis.2d 447, 463, 109 N.W.2d 271 (1961), *citing State v. Berres,* 270 Wis. 103, 107, 70 N.W.2d 197 (1955). A determination that only the actual cash proceeds of an exempt pension plan remain exempt would for all practical purposes destroy the exemption provided by section 815.18(31), since a lump-sum payment from an exempt plan cannot readily be kept in cash. While it is not necessary to decide whether such sums would remain exempt if invested in substantially non-liquid assets such as real estate or tangible personalty, it is necessary, in order to adequately effectuate the legislative intent, to hold that such funds may at least be converted into "cash equivalent" forms such as demand accounts or other relatively liquid investments without losing exempt status. The debtor's IRA falls into this category and thus the $16,828.54 which the parties have stipulated to be traceable to exempt pension funds remains exempt in the IRA. All other amounts in the IRA are non-exempt and subject to administration by the trustee.

5. *See* footnote 1 for full text of section 815.18(31).